[Cite as *Castello v. Castello*, 2023-Ohio-4586.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | | |

DEANNA L. CASTELLO

    Appellee

    v.

DANIEL E. CASTELLO

    Appellant

C.A. No.    22AP0020

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    21DR0364

DECISION AND JOURNAL ENTRY

Dated: December 18, 2023

---

HENSAL, Presiding Judge.

{¶1}    Daniel Castello appeals a judgment decree of divorce of the Wayne County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2}    The Castellos married in 2000 and had two children, one born in 2003 and the other in 2006. They separated in February 2019, and Wife filed a petition for divorce in October of that year. Following a hearing before a magistrate, the magistrate entered a decision that granted the Castellos a divorce on the ground of incompatibility. The trial court adopted the magistrate's decision and entered a decree of divorce.

{¶3}    In its decree, the court determined that the termination date of the marriage was the date of the parties' separation. It divided the parties' property and debt but did not include any of Husband's alleged debt in its list of marital debt. Although Husband requested spousal support, the court determined that it was unwarranted. The court also named Wife as the residential parent

and legal custodian of the parties' remaining minor child. Although granting Husband standard parenting time, it did not reduce his child support obligation because of the number of nights the child would be staying with him.

{¶4} Husband objected to the magistrate's decision, but the trial court overruled his objections. Husband later moved for a new trial, but the trial court denied his motion. Husband has appealed the decree of divorce and the denial of his motion for new trial, assigning four errors.

II.

ASSIGNMENT OF ERROR I

THE COURT ERRED IN FAILING TO AWARD SPOUSAL SUPPORT.

{¶5} In his first assignment of error, Husband argues that the trial court incorrectly failed to award him spousal support. "This Court reviews a trial court's award of spousal support under an abuse of discretion standard." *Doubler v. Doubler*, 9th Dist. Medina No. 22CA0002-M, 2023-Ohio-393, ¶ 14, quoting *Krone v. Krone*, 9th Dist. Summit No. 25450, 2011-Ohio-3196, ¶ 8. "An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling." *Nguyen v. Coy*, 9th Dist. Summit No. 28308, 2017-Ohio-4164, ¶ 4, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶6} Revised Code Section 3105.18(B) provides that, upon the request of either party, the court may award reasonable spousal support to either party. In determining whether spousal support is appropriate and reasonable, the court must consider the factors listed in Section 3105.18(C)(1)(a–n). R.C. 3105.18(C)(1).

{¶7} Husband argues that, historically, Wife has made approximately $60,000 more than him. Although she testified that she will not make as much at her current job, Husband argues that the court should have used the average of her salary over the last three years as her income for

spousal support purposes. He also argues that the marriage was of a long duration of 19 years, that he has had to down-size from a 3,000 square foot house to a 1,000 square foot house, that Wife has more education than him, that he has marital debt that Wife does not have to share, and that he must pay child support, including the child's vehicle expenses.

{¶8} Husband incorrectly cites the law for determining income for child support purposes in support of his argument that Wife's recent annual salaries should be averaged. He has not cited any precedent suggesting that a court must average recent salary amounts when determining spousal support. Section 3105.18(C)(1)(a) and (b) only require the court to consider the income of the parties and the relative earning abilities of the parties. According to Wife, she used to have a job that paid her around $125,000 in base salary. She would also receive around $40,000 in bonuses. The last year that she worked at the job, however, the company did not give any bonuses. She subsequently moved to a different company where she also receives around $125,000 a year. We conclude that the trial court's finding that Wife earns around $124,999.00 per year and that Husband earns $97,406.00 per year is supported by the record.

{¶9} The trial court listed each of the factors under Section 3105.18(C)(1) and worked through the relevant ones in its analysis of whether Husband should receive spousal support. Upon review of the record, we conclude that the trial court did not abuse its discretion when it declined to award Husband spousal support. Husband's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE COURT ERRED WHEN IT CALCULATED CHILD SUPPORT WITHOUT GIVING CREDIT FOR PARENTING TIME NOR HEALTH INSURANCE COSTS.

{¶10} In his second assignment of error, Husband argues that the trial court should have deviated from the child support schedule because of the number of overnight stays the minor child

has with him and should have included the amount he pays for health insurance for the child. In general, "a trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion." *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997). If the issue on appeal, however, "is whether the trial court correctly applied the child support statute, this Court employs a de novo standard of review." *Michaels v. Saunders*, 9th Dist. Lorain No. 14CA010604, 2015-Ohio-3172, ¶ 15. In addition, "an appellate court reviews the factual findings to support that award under a manifest-weight-of-the-evidence standard." *Havrilla v. Havrilla*, 9th Dist. Summit No. 27064, 2014-Ohio-2747, ¶ 13, quoting *Wallace v. Wallace*, 195 Ohio App.3d 314, 2011-Ohio-4487, ¶ 10 (9th Dist.).

{¶11} Regarding overnight visits, Section 3119.051 provides that a court "shall reduce by ten per cent the amount of the annual individual support obligation" if it issues "a court-ordered parenting time order that equals or exceeds ninety overnights per year." Husband argues that he was entitled to a ten percent reduction because he has the child for 105 overnight visits a year. Section 3119.30(E), meanwhile, provides that "[t]he cost of providing health insurance coverage for a child subject to an order shall be defrayed by a credit against that parent's annual income when calculating support[.]" Husband argues that he provides health insurance for the child but the court failed to give him credit for it. He further argues that the court should have imputed additional income to Wife to reflect her true earning capacity. Wife argues that the trial court did not err because Husband does not have 90 or more overnight stays with the child and he did not provide any evidence of his alleged health insurance costs.

{¶12} Regarding overnight stays, Husband argues that the combination of alternating weekends plus two weeks of vacation, five weeks of summer recess, half of winter recess, and three-day holiday weekends brings his number of overnight stays up to 105. He overlooks,

however, that the weekends during the five weeks of summer recess abide by the normal weekend rotation rules. He also double counts the two weeks of vacation that are within the five weeks of summer recess. According to the standard parenting schedule, a non-residential parent gets five weeks during summer recess and, within that period, is entitled to take the children on a vacation of up to 14 days, during which the alternating weekend schedule does not apply. Husband also assumes he will have 10 overnight stays over winter recess, but there was no evidence presented about the length of the recess. Husband also overlooks that some of the three-day holiday weekends will fall on his regularly-scheduled weekends, giving him only one extra overnight with the child on those weekends, not three. Upon review of the record, we conclude that Husband has not established that he will have 90 or more overnight stays with the child each year.

{¶13} Regarding health insurance, Wife acknowledged that Husband has provided health insurance for the child. Husband, however, did not provide any evidence of the cost of that insurance at trial. According to Husband, he listed a monthly insurance expense of $413.62 in his affidavit of income and expenses, but he acknowledges that included coverage for himself and Wife. Upon review of the record, Husband has not established that the trial court incorrectly failed to deduct the child's insurance costs from Husband's income because there was no testimony or other evidence establishing the amount of the expense.

{¶14} Husband also argues that the trial court should have imputed additional income to Wife because she received bonuses at her former employer. Because this argument is outside the scope of Husband's assigned error, we decline to address it. *State v. Williams*, 9th Dist. Summit No. 29547, 2021-Ohio-2491, ¶ 15; *I.R. v. D.R.*, 9th Dist. Wayne No. 22AP0012, 2023-Ohio-1427, ¶ 35. Husband's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE COURT ERRED IN ITS CALCULATION OF THE DEBT ASSET
ALLOCATION WHEN IT FAILED TO CONSIDER ONE PARTIES['] DEBT,
MISCALCULATED THE EQUITY IN THE MARITAL HOME, AND
ALLOCATED THE EQUITY IN AN ASSET THAT WAS PURCHASED AFTER
THE DATE OF DIVORCE.

{¶15} In his third assignment of error, Husband argues that the trial court failed to divide the marital debt he acquired, awarded Wife equity in a house he purchased after the conclusion of the marriage, and did not properly calculate the equity in the marital home. Regarding Husband's debt, Section 3105.171(B) provides that, "[i]n divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property." Although the section does not specifically address debt, this Court has concluded that a trial court's division of property must also include marital debt. *Smith v. Smith*, 9th Dist. Summit No. 26013, 2012-Ohio-1716, ¶ 8. This is a fact-based determination within the province of the trial court that this Court reviews under a manifest-weight standard. *See Suppan v. Suppan*, 9th Dist. Wayne No. 17AP0015, 2018-Ohio-2569, ¶ 23, citing *Morris v. Morris*, 9th Dist. Summit No. 22778, 2006-Ohio-1560, ¶ 23. This Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way * * *." (Alteration in original.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001).

{¶16} At trial, Husband testified that he had one credit card that had a balance of five or six thousand dollars and another credit card that had a balance of around five thousand dollars. He estimated his total debt load to be around $15,000, but then said that did not include a mower, which would increase the total. Husband contends he listed all the debts in his affidavit of

property. That affidavit listed three credit cards for Husband. One had a balance of $2,487.97, another $600.00, and the third $326.88.

{¶17} Unlike Wife, Husband did not provide exact amounts of his credit card balances, testify about the amount he owed on the mower, or provide any documentary evidence to corroborate his claims. Considering the paucity of evidence as to the existence and exact amount of Husband's alleged debts, we conclude that the trial court's finding that Husband did not have any marital debts was not against the manifest weight of the evidence. *See McDowall v. McDowall*, 9th Dist. Summit No. 27448, 2015-Ohio-3213, ¶ 5 (noting that there was no documentary evidence to support the existence of a loan or its terms); *Jagusch v. Jagusch*, 9th Dist. Medina No. 02CA0036-M, 2003-Ohio-243, ¶ 30-31 (explaining that trial court correctly determined that alleged loan that was not corroborated by documents or any other evidence was not a marital debt); *Kraguljac v. Kraguljac*, 9th Dist. Medina No. 3161-M, 2001 WL 833482, *2 (July 25, 2001) (upholding trial court's determination that loan that was unsupported by any documentary evidence was not a marital debt).

{¶18} Regarding the equity in the house Husband purchased after he and Wife separated, Husband argues that, because he did not purchase the house until after the date that was used for the termination of the marriage, the trial court incorrectly awarded Wife equity in it. Wife, however, notes that the trial court found that Husband used $26,553 of marital funds as his down payment for the residence. The court included the amount of the down payment in its list of marital assets but did not list any other equity in the home. Because Husband did not trace the source of the funds he used as the down payment to his separate property, we conclude that the trial court's finding is not against the manifest weight of the evidence. *See Henley v. Henley*, 9th Dist. Wayne

No. 05CA0053, 2006-Ohio-3336, ¶ 9 (explaining that spouse who wanted funds treated as separate property had the burden of tracing the expenditure to a separate property source).

**{¶19}** Regarding the equity in the marital home, Husband notes that the parties stipulated that the house was worth $390,000. He notes that Wife subsequently refinanced the loan on the house and that the balance of the new loan was $317,460. He, therefore, argues that the marital equity in the house should have been $72,540.

**{¶20}** Wife did not refinance the loan on the marital home until after the termination date of the marriage. The trial court found that there was a first mortgage on the house with a balance of $245,068.43. It also found that there was a home equity line of credit of $33,790.73. Subtracting those amounts from the agreed-upon value of the house, the trial court determined that the equity in the home was $111,142.00. It listed that full amount in its chart of marital assets that Wife would retain, benefitting Husband more than if it had found the equity in the house was only $72, 540.

**{¶21}** Upon review of the record, we conclude that the trial court's division of marital assets and liabilities is not against the manifest weight of the evidence. Husband's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE COURT ERRED IN NOT GRANTING A NEW TRIAL

**{¶22}** In his last assignment of error, Husband argues that the trial court incorrectly denied his motion for new trial under Civil Rule 59. He argues the court should have granted him a new trial under Rule 59(A)(7) because it did not include his health insurance expenses or a parenting-time credit in its child support calculation. He argues it should have granted him a new trial under Rule 59(A)(3) because he was surprised by the fact that Wife changed jobs and decreased her

income midway through the trial. He argues the court should have granted him a new trial under Rule 59(A)(5) because it miscalculated the value of the marital home, included the equity in his home as a marital asset, and did not include all the parties' debt in its final entry. He also argues that it should have granted him a new trial under Rule 59(A)(1) because it did not admit all his exhibits, even though Wife did not object to them. He further argues that the court should have granted him a new trial under Rule 59(A)(4) because it penalized him for an instance of contempt that did not occur. Husband argues the trial court also incorrectly stated that it could not consider shared parenting and did not consider his motion for new trial adequately.

{¶23} Rule 59(A) provides a list of grounds upon which a new trial may be granted. It also provides that a new trial "may be granted in the sound discretion of the court for good cause shown." *Id*. "[If] the basis of the motion involves a question of law, the de novo standard of review applies, and when the basis of the motion involves the determination of an issue left to the trial court's discretion, the abuse of discretion standard applies." *Dragway 42, L.L.C. v. Kokosing Constr. Co., Inc.*, 9th Dist. Wayne No. 09CA0073, 2010-Ohio-4657, ¶ 32.

{¶24} This Court has already discussed whether the trial court should have included Husband's health insurance expenses or a parenting-time credit, whether the court miscalculated the equity in the marital home, whether it should have included the equity in his home in its list of marital assets, and whether it failed to list any marital debts. Regarding Wife's change of employment, Husband has not provided any support for his assertion that a spouse's change in employment constitutes a "surprise" under Rule 59(A)(3).

{¶25} Regarding Husband's exhibits, he has not identified which exhibits were excluded by the trial court or developed an argument as to why they were admissible, besides asserting that

Wife did not object to their admissibility. He, therefore, has not established that the court was required to admit them.

{¶26} Regarding contempt, Husband alleges that the trial court made him bear the costs associated with preparing qualified domestic relations orders (QDROs) as a penalty for discovery contempt, even though it never held a contempt hearing. In the pensions part of the decree, the court wrote that it would have preferred to divide the parties' retirement accounts by offsetting them against each other. Because of Husband's "persistent recalcitrance" in failing to provide information about all the accounts, however, it could not do so and had to order them to be divided equally. Section 3105.171(E)(5) provides that, "[i]If a spouse has substantially and willfully failed to disclose marital property, separate property, or other assets, * * *, the court may compensate the offended spouse with a distributive award or with a greater award of marital property * * *." We conclude that the trial court did not have to find Husband in contempt to make him bear the cost of preparing QDROs and that it did not exercise its discretion improperly when it chose to do so.

{¶27} Finally, regarding shared parenting, Section 3109.04(A)(1) provides that, if neither parent files a pleading or motion for shared parenting, the court "shall allocate the parental rights and responsibilities for the care of the children primarily to one of the parents [and] designate that parent as the residential parent and the legal custodian of the child[.]" In addition, contrary to Husband's assertion, the decree does not provide that the court could not consider shared parenting because counsel failed to file a proposed plan. Instead, it explained that shared parenting was not requested by either party and that, even if they had, the court would not find it to be in the children's best interests.

**{¶28}** Upon review of the record, we conclude that Husband has not established the trial court incorrectly denied his motion for new trial. Husband's fourth assignment of error is overruled.

### III.

**{¶29}** Husband's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
FLAGG LANZINGER, J.
CONCUR.


APPEARANCES:

DANIELLE C. KULIK, Attorney at Law, for Appellant.

ANDREA L. BURDELL-WARE, Attorney at Law, for Appellee.